UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 02-CV-770 (JEL/JGL)

State of Minnesota, by its Attorney General, Mike Hatch,

Plaintiff,

and

United States of America,

Intervenor,

v.

AMENDED ORDER

Sunbelt Communications and Marketing, d/b/a Sunbelt Communications, Sunbelt Marketing

and

Lara Horne Albrecht, individually, and as President of Sunbelt Communications and Marketing, LLC,

Defendants.

---

Assistant Minnesota Attorneys General, Catherine M. Powell, Esq., and Prentiss Cox, Esq. appeared for Plaintiff State of Minnesota.

Mary Ann Wymore, Esq., appeared *pro hac vice*, with Richard M. Carlson, Esq., for Defendants Sunbelt Communications and Marketing, LLC, and Lara Horne Albrecht.

Assistant United States Attorney James S. Alexander, Esq., was present.

---

THIS MATTER came before the undersigned Judge of the District Court on July 10, 2002, for a hearing on Plaintiff's Motion for a Preliminary Injunction. On July 24, 2002, Plaintiff filed a



FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED
DEPUTY CLERK'S INITIALS

Supplemental Memorandum in Support of Its Motion for a Preliminary Injunction. On August 5, 2002, the United States moved to intervene pursuant to Fed. R. Civ. P. 24 and 28 U.S.C. § 2403(a) (2000) and filed a Memorandum in Support of the Constitutionality of the Telephone Consumer Protection Act of 1991; the Court granted the Motion to Intervene on August 9, 2002. On August 5, 2002, Defendants filed a Response to the Plaintiff's Supplemental Memorandum. On August 20, 2002, Defendants filed a Response to the United States's Memorandum in Support of the Constitutionality of the Telephone Consumer Protection Act of 1991. For the reasons detailed below, the Court grants Plaintiff's motion.

1. Background

Defendant, Sunbelt Communications and Marketing, LLC (Sunbelt), is a Nevada business entity whose principal place of business is in Addison, Texas. Sunbelt has never registered with the Office of the Secretary of State of Minnesota to transact business in Minnesota. Nonetheless, Sunbelt acquired office space in Minneapolis and began advertising its services to Minnesota residents and businesses.

Sunbelt estimated that it has the phone numbers of 183,000 fax machines in the Twin Cities area. Sunbelt's service, which was advertised as "a great way to meet new customers," consists of faxing its clients' advertisements to fax machines in Minnesota. Sunbelt offers several advertising packages to its clients. For $700, Sunbelt will fax 10,000 copies of an advertisement; for $1,200, it will fax 20,000 copies; for $2,000, it will fax 40,000 copies. Without the prior consent of or an invitation from the recipient, Sunbelt bundled the advertisements of its clients and faxed them to various businesses and individuals in the area. Each advertisement contained a phone number that recipients could call to request that their numbers be removed from Sunbelt's fax list.

On or about March 3, 2001, the Office of the Minnesota Attorney General began receiving complaints about the advertising practices of Sunbelt, or one of its predecessor companies. Since approximately October 2001, they have received over 100 complaints about Sunbelt. In connection with its motion, the State included several affidavits that illustrate the effects of Sunbelt's practices.

For instance, one company manages between 400 and 500 fax machines, which are regularly used in the course of business. Several times per week, the company received advertisements from Sunbelt. Each bundle of advertisements lasted for one to two hours. Over a six-month period, fax advertising constituted approximately 50-60% of the company's fax "traffic." This traffic cost the company money in several ways. The company had to pay for toner and paper used by the advertisements; the advertisements tied up the company's fax system, hampering its efficiency; at times, the advertisements caused the company's system to "crash," further hampering its efficiency; and human resources were expended both in sorting through the advertisements and in attempting to block Sunbelt's transmissions to the company's fax machines.

In another case, an individual received so many advertisements on her home fax machine that they used all of the toner and caused her to miss faxes that she expected and wanted to receive. She was forced to pay for the cost of the toner and the paper used to print Sunbelt's advertisements.

Another individual maintained a fax machine on the computer system in his home office. His computer system was used in connection with his consulting business. He received approximately five advertisement bundles from Sunbelt each week. He, also, paid for the paper and printer cartridges used to print Sunbelt's advertisements. In addition, the advertisements "froze" his computer, diminishing his productivity.

Another individual maintained a fax machine in her home for her personal and business use.

She complained that she received fax advertisements between 4:15 a.m. and 7:15 a.m., intruding upon her privacy. She also complained that she had to pay for the fax paper and toner upon which Sunbelt's advertisements were printed.

Finally, an individual maintained a fax machine at his Insty Prints franchise, where he received a fax advertisement for Sunbelt's services. He responded to the advertisement and spoke to one of Sunbelt's representatives. The individual asked if it was "okay" to send fax advertisements in Minnesota. Sunbelt's representative explained that its services were legal, so long as the advertisement contained a phone number that recipients could call to request that their fax numbers be removed from Sunbelt's list. Relying upon the statements of Sunbelt's representative, the individual purchased three blocks of advertisements. After two advertisements were sent, the person received complaints from recipients of his advertisement. In response, he cancelled his third block of advertisements. He was later contacted by the Minnesota Attorney General's Office and informed that there was a federal law prohibiting fax advertising.

Plaintiff, State of Minnesota (State), seeks to enjoin Sunbelt and Sunbelt's principal, Defendant, Lara Horne Albrecht (Albrecht), from continuing its practice of faxing unsolicited advertisements to Minnesota residents. The United States has intervened and has submitted a memorandum and supporting affidavit, arguing that the Telephone Consumer Protection Act of 1991 (TCPA) is constitutional.

2. Legal Standard for Preliminary Injunction

"When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose." *United States v. White*, 769 F.2d 511, 515 (8th Cir. 1985); *Donovan v.*

*Brown Equip. & Serv. Tools*, 666 F.2d 148, 157 (5th Cir. 1982) (same); *see also United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000) (noting traditional requirements for injunctive relief need not be satisfied where injunction is expressly authorized by statute); *Envtl. Def. Fund v. Lamphier*, 714 F.2d 331, 338 (4th Cir. 1983) (stating where a statute authorizes injunctive relief for its enforcement, plaintiffs need not plead and prove irreparable injury).

3. Preliminary Injunction Analysis

This is a case in which an injunction is expressly authorized by statute. The TCPA provides that "it shall be unlawful for any person within the United States . . . to use any telephone facsimile machine . . . to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C) (2000).[1] The TCPA provides that "whenever the attorney general of a State . . . has reason to believe that any person has engaged or is engaging in a pattern or practice . . . in violation of this section . . . , the State may bring a civil action on behalf of its residents to enjoin such calls, an action to recover for actual monetary loss or receive $500 in damages for each violation, or both such actions." 47 U.S.C. § 227(f)(1).

The Court concludes that the prerequisites for the remedy have been demonstrated. In Paragraph 8 of their Answer, Defendants admit that "Sunbelt has been sending advertising to Minnesota recipients both with and without their permission." They further "admit that Sunbelt advertises its services by sending unsolicited and solicited faxes to Minnesota recipients."

---

[1] An "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4).

However, they "deny that Sunbelt's conduct is illegal." The affidavits submitted by the State further demonstrate that Defendants have violated 47 U.S.C. § 227(b)(1)(C).

The injunction requested by the State would also fulfill the legislative purpose of the statute. The TCPA was enacted to protect the privacy interests of residential telephone subscribers by restricting certain uses of fax machines. *Int'l Sci. & Tech. Inst., Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1150 (4th Cir. 1997) (*citing* S. Rep. No. 102-178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968). The statute permits an injunction to prevent calls that violate the statute. The State has demonstrated that Sunbelt has violated the TCPA. Furthermore, it is evident that, absent an injunction, Sunbelt would continue to violate the TCPA.[2] Because the State seeks to enjoin Defendants from further violating the statute, the injunction requested by the State would fulfill the legislative purpose of the statute.

Sunbelt argues that an injunction is not appropriate because the harm will fall disproportionately on it, effectively putting it out of business. The plea to remain in business while blatantly violating a federal statute is not persuasive to this Court. Even if the statute were ultimately found to be unconstitutional—which, as discussed below, does not appear likely—Defendants have offered no justification for why they are entitled to profit in the interim, unencumbered by competition that is now undoubtedly suppressed due to the existence of a clear

---

[2] Albrecht submitted an affidavit in which she stated that Sunbelt was in the business of fax advertising. She further maintained that an injunction could cause Sunbelt to go out of business. From this, the Court infers that Sunbelt would continue to violate the TCPA if an injunction is not issued. *See S.E.C. v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1979) (stating in an action for statutory injunction, once a violation has been demonstrated, moving party need only show a reasonable likelihood of future violations in order to obtain relief).

federal statute prohibiting their business practices. Other companies that have challenged this and other statutes have done so without engaging in illegal conduct and waiting to be sued. *See Destination Ventures, Ltd. v. F.C.C.*, 844 F. Supp. 632 (D. Or. 1994), *aff'd*, 46 F.3d 54 (9th Cir. 1995); *W. States Med. Ctr., v. Shalala*, 69 F. Supp. 2d 1288 (D. Nev. 1999) (concerning pre-enforcement challenge to 21 U.S.C. § 353a); *see also Thompson v. W. States Med. Ctr.*, ___ U.S. ___, 122 S. Ct. 1497 (2002) (fearing they would be prosecuted, pharmacies brought an action to determine the constitutionality of a regulation). Defendants will not be heard to complain that they will be irreparably harmed by enforcement of a valid statute. *See Surdyk's Liquor, Inc., v. MGM Liquor Stores, Inc.*, 83 F. Supp. 2d 1016, 1028 (D. Minn. 2000) (stating company "may not legitimately claim economic harm when a court merely prohibits it from continuing to engage in conduct that violates federal law").

Accordingly, the Court concludes that the State is entitled to injunctive relief under the TCPA. However, Defendants argue that the TCPA is not a valid statute because it places an unconstitutional restriction upon their First Amendment right to advertise. Consequently, whether the Court will grant the State's motion depends upon whether the Court is convinced that the State is likely to prevail on its argument that the TCPA is constitutional.

4. Constitutionality of the TCPA

The parties agree that the proper test for reviewing whether the TCPA's restriction of fax advertising violates the First Amendment appears in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). The United States offers the additional argument that the statute is more properly analyzed as an anti-conversion statute because its purpose is to prevent the shifting of advertising costs (paper, toner, human resources, business

disruption), from the advertiser to the recipient of the advertising. Under *Central Hudson*, if commercial speech is not false or misleading, a government body seeking to restrict such speech must show:

1) a substantial interest to be achieved by the restriction;

2) that the restriction advances that interest; and

3) that the restriction is not more restrictive than necessary to advance the interest.

447 U.S. at 564. Our research reveals four cases have discussed the constitutionality of the TCPA under the *Central Hudson* test. Three cases have upheld its constitutionality. *See Texas v. Am. Blastfax, Inc.*, 121 F. Supp. 2d 1085, 1092 (W.D. Tex. 2000); *Kenro, Inc., v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1172 (S.D. Ind. 1997); *Destination Ventures,* 844 F. Supp. at 640. The Ninth Circuit affirmed the finding of constitutionality in *Destination Ventures*, but its analysis was limited to the third prong of the *Central Hudson* test, whether there was a reasonable fit between the governmental interest and the regulation. 46 F.3d at 56. The fourth and most recent case found that the TCPA was unconstitutional. *Missouri v. Am. Blast Fax, Inc.*, 196 F.Supp. 2d 920 (E.D. Mo. 2002). In that case, the Honorable Stephen N. Limbaugh concluded that Congress had not demonstrated a substantial interest in restricting commercial speech and that the restrictions in the TCPA failed to satisfy the other elements of *Central Hudson* as well. *Blast Fax*, 196 F.Supp. 2d at 931. Of the four cases addressing the constitutionality of the TCPA, *Blast Fax* is the only one decided in the Eighth Circuit. It is currently on appeal to the United States Court of Appeals for the Eighth Circuit. It is against this backdrop that the Court must evaluate the TCPA. We note that the parties to the instant litigation have suspended discovery pending the Eighth Circuit's decision in the Missouri case, and therefore the only decision for this Court is whether Sunbelt should be

allowed to persist in its practices pending the decision.

Under *Central Hudson*, the Court addresses as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. For the most part, there is no indication that Sunbelt's advertisements were misleading or concerned unlawful activity.[3]

The first prong of the *Central Hudson* test requires the Court to consider whether the government has demonstrated a substantial interest in restricting commercial speech. Thus, the state, as the party seeking to uphold a restriction on commercial speech, carries the burden of justifying it. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). The state is not required to rely on interests advanced at the time the restriction was enacted. *See Bolger v. Youngs Drug Prods., Inc.*, 463 U.S. 60, 71 (1983) (*citing Ohralik v. Oh. State Bar Ass'n*, 436 U.S. 447, 460 (1978)). The *Central Hudson* test does not permit the Court to supplant the precise interests put forward by the government with other interests. *Edenfield*, 507 U.S. at 768.

The State identified two interests it seeks to protect by enforcing the TCPA: (1) preventing the invasion of privacy caused by fax advertising; and (2) preventing the cost-shifting effect of such advertising.

With respect to the invasion of privacy argument, the United States Supreme Court stated that the government has a substantial interest in protecting the public's right to privacy. *See*

---

[3] To the extent that Sunbelt's services violated the TCPA, advertising its own services constituted the advertisement of illegal activity. Similarly, when a Minnesota resident contacted Sunbelt to inquire about its advertising services, Sunbelt's representations as to the legality of its services could be described as misleading, especially considering the state of the law. However, the identification of Sunbelt's services as illegal activity raises the very constitutional issues the Court seeks to address in this Order.

*Edenfield*, 507 U.S. at 769. As mentioned above, the TCPA was enacted to protect the privacy interests of residential telephone subscribers. *See Int'l Sci. & Tech. Inst.*, 106 F.3d at 1150. Finally, the State has provided affidavits from residents stating that they have received Sunbelt's advertisements and consider them to be an invasion of privacy. With respect to the protection of privacy, the State has satisfied the first prong of the *Central Hudson* test.

The Court also concludes that the State has met its burden with respect to the cost-shifting argument. In its memorandum and supporting affidavits, the State identifies two "costs" that are shifted to the recipient of fax advertisements: time and money. The State provided an affidavit from an individual who worked at a company that had between 400 and 500 fax machines. During a six-month period, fax advertising made up 50-60% of the "traffic" on the company's fax machines. The faxes not only caused direct out-of-pocket expenses related to paper and toner costs, they also caused indirect expenses related to diminished efficiency of the fax machines, time wasted sorting through the faxes, and time spent trying to block the faxes. The State also provided an affidavit from an individual who maintains a business office in his home and can receive faxes on his computer. He stated that receiving faxes on his computer slows his computer system and adversely affects his productivity. He also stated that the fax advertising caused direct out-of-pocket expenses related to paper and toner costs. The other affidavits offered by the State raise similar concerns. The United States submitted an affidavit from the Chief Information Officer at Covington & Burling detailing the disruption caused by 1,500 unsolicited faxes recovered from one fax company after the firm requested that they stop. While this sort of anecdotal evidence is not the most persuasive type of evidence that could be offered, the Court notes that the Supreme Court has permitted litigants "to justify restrictions based solely on history, consensus, and 'simple common

sense.'" *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995). The Court is satisfied that the government has a substantial interest in protecting its residents who own fax machines from the cost-shifting aspects inherent in this type of advertising.

The second prong of the *Central Hudson* test requires the Court to consider whether the restriction will in fact alleviate the harm to a material degree. Defendants point out that the TCPA's restriction only applies to certain unsolicited fax advertisements while other kinds of unsolicited fax advertisements that are not prohibited by the TCPA could continue to shift costs to the recipient.[4] For example, Defendants mention church announcements for marriage seminars or rummage sales, solicitations for campaign contributions from politicians, and advertisements for employment opportunities. Similarly, the TCPA does not prevent "the costs of printing political messages, jokes, and even some advertisements which are not included in the TCPA's definition," like job opportunities. *Blast Fax*, 196 F. Supp. 2d at 931.

The Court is not persuaded that these arguments are pertinent for two reasons. First, political messages or solicitations for campaign contributions may be deemed to be "political speech" as opposed to "commercial speech," rendering *Central Hudson* inapplicable. Likewise, to the extent "jokes" are not "commercial speech," *Central Hudson* does not provide the test for determining the constitutionality of their restriction.[5] Secondly, it is not evident that job openings

---

[4] Defendants do not address the State's interest in protecting its residents from invasion of privacy.

[5] In reviewing the evidence submitted by the State, the Court found no evidence that Sunbelt sent out any jokes, political messages, or solicitations for campaign contributions.

or church rummage sales and marriage seminars make up a significant source of Sunbelt's fax advertising.[6] The law does not require that a statute devise a perfect solution to a problem before it is permitted to make progress toward a solution. *See Destination Ventures*, 46 F.3d at 56 (*citing United States v. Edge Bd.*, 509 U.S. 418, 434 (1993) ("Nor do we require that the government make progress on every front before it can make progress on one front.")); *Moser v. F.C.C.*, 46 F.3d 970, 975 (9th Cir. 1995) ("Congress may reduce the volume of intrusive telemarketing calls without completely eliminating the calls.").

Based upon the evidence in the record, the Court is convinced that the TCPA materially furthers the State's interests in preventing the invasion of privacy and cost-shifting effects that result from fax advertising, even if it does not eliminate them altogether.

Under the third prong of the *Central Hudson* test, the government must show that the restriction is not more restrictive than necessary to advance these interests. In explaining this prong of the *Central Hudson* test, the Supreme Court said that a restriction on commercial speech need not be the "least-restrictive-means" for advancing the government's interest, but rather a means that is "narrowly tailored to achieve the desired objective." *Bd. of Trs. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989); *see also Edenfield*, 507 U.S. at 767.

Defendants argue that there are numerous other less-restrictive alternatives to the TCPA's

---

[6] Of the advertisements submitted by the State, there were no advertisements of rummage sales or marriage seminars. There were a few advertisements for business seminars. While the print quality of the advertisement was poor, there was apparently one advertisement for job opportunities with Gateway Computers. The other advertisements were for satellite systems, mortgage rates, cell phones, Sunbelt's services, mugs, T-shirts, clocks, windshield replacement services, commercial real estate, weight-loss programs, insurance quotes, apartment rentals, music lessons, and delivery services.

provisions. The Court rejects this argument as a misapplication of the law, as explained in *Fox*. While such alternatives may help determine whether the "fit" is narrowly tailored, the Court is not convinced that the TCPA's restrictions are excessive.

Defendants argue, for instance, that fax advertisers could be required to provide a toll-free telephone number by which a recipient could have his or her fax number removed from the sender's list. *See* Minn. Stat. § 325E.395 (2000). Citing then-Justice Rehnquist's concurring opinion in *Bolger*, Defendants argue that this would allow recipients to have their names removed from the list after one exposure to an unsolicited mailing. However, *Bolger* dealt with unsolicited advertisements by mail, while the current case deals with unsolicited advertisements by fax. While these formats are similar, there are important distinctions. While *Bolger* dealt with the issue of privacy, it did not deal with the issue of cost-shifting. The actual receipt of a piece of mail does not cost the recipient anything.[7] In addition, the receipt of an unwanted piece of mail does not ordinarily prevent the recipient from receiving desirable pieces of mail. In contrast, there is a cost associated with receiving faxes and unwanted faxes can prevent the receipt of wanted faxes. At any rate, it is not lost on this Court that all of the complaints received by the State have occurred while the "less-restrictive" provisions of Minn. Stat. § 325E.395 have been in effect. Thus, the Court is not persuaded that the "opt-out" approach taken by Minnesota law provides a better fit for the

---

[7] Quoting from an article in the *Washington Post*, United States Representative Edward J. Markey, former Chair of the House Subcommittee on Telecommunications and Finance, stated that "receiving a junk fax is like getting junk mail with the postage due." *Hearing Before the Subcommittee On Telecommunication & Finance Of the House Energy and Commerce Commission on H.R. 1304 and 1305*, 102d Cong., 1st Sess. 2 (1991).

State's interests than the TCPA's complete ban on unsolicited fax advertising.

Citing *Van Borgen v. Minnesota*, 59 F.3d 1541 (8th Cir. 1995), Sunbelt also argues that Minnesota's more permissive fax statute prevails over the federal statute for interstate fax transmissions. That argument is unavailing, as well. The state statute at issue in *Van Borgen* was not in conflict with the TCPA, but was "virtually identical" to it. *Van Borgen*, 59 F.3d at 1548. The Eighth Circuit noted "that there is nothing in the two statutes that creates a situation in which an individual cannot comply with one statute without violating the other." *Id.* *Van Borgen* does not stand for the proposition that a state statute can give permission to violate a federal statute.

Finally, for the reasons set out in *Texas v. Am. Blastfax, Inc.*, 121 F. Supp. 2d at 1087-89, this Court is of the opinion that the reach of the TCPA extends to intrastate, as well as interstate, communications. *See also Hooters of Augusta, Inc., v. Nicholson*, 537 S.E.2d 468, 471 (Ga. Ct. App. 2000).

5. Conclusion and Order

For the foregoing reasons, the Court concludes that the State is likely to prevail on its argument that the TCPA's restrictions on unsolicited fax advertising are constitutional, and that the State has demonstrated that Defendants have violated the TCPA. Thus, the Court concludes that the State's Motion for a Preliminary Injunction should be granted without bond. *See* 47 U.S.C. § 227(f)(2).

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for a Preliminary Injunction is GRANTED [Docket No. 6].

2. Until further order of the Court, Sunbelt, Sunbelt's employees, officers, directors, independent contractors, agents, successors, assignees, affiliates, merged or acquired

predecessors, parent or controlling entities, subsidiaries, and all other persons acting in concert or participation with it, are ENJOINED from:

a. Sending unsolicited facsimiles advertising the commercial availability or quality of any property, goods, or services unless it maintains documentation evidencing the express prior invitation or permission of every person in Minnesota to whom it sends a fax advertisement, whether the fax advertisement is sent on Sunbelt's own behalf or on behalf of another person;

b. Entering into, forming, organizing, or reorganizing into any partnership, corporation, sole proprietorship, or any other legal structure for the purpose of avoiding compliance with the terms of the Orders and Judgment in this case; or

c. Violating 47 U.S.C. § 227 in any other manner.

Dated: September 30, 2002

JOAN ERICKSEN LANCASTER
United States District Judge